Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| José L. Hernández Compres c/p Ancelmo Hernández Compres<br><br>Recurrente<br><br>vs.<br><br>Junta de Libertad Bajo Palabra<br><br>Recurrida | KLRA202500032 | **Revisión Administrativa** procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 147481<br><br>Sobre: No concesión del Privilegio de Libertad Bajo Palabra – Volver a Considerar |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, el Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de febrero de 2025.

Comparece ante nos, el señor José L. Hernández Compres c/p Ancelmo Hernández Compres (en adelante, Sr. Hernández Compres o recurrente), quien presenta recurso de revisión administrativa en el que nos solicita la revocación de la "Resolución" emitida el 7 de octubre de 2024,[1] por la Junta de Libertad Bajo Palabra (en lo sucesivo, JLBP o recurrida). Mediante dicha determinación, la JLBP denegó conceder el privilegio de libertad bajo palabra solicitado por el recurrente.

Cabe resaltar que el Sr. Hernández Compres presentó una solicitud para litigar *in forma pauperis*, la cual está debidamente cumplimentada y, considerando su condición de confinado, se acepta y aprueba según presentada.

Luego de evaluar el escrito del recurrente, así como la evidencia documental anejada al mismo, prescindimos de la comparecencia de la parte recurrida, y procedemos a resolver.

---

[1] Notificada el 4 de diciembre de 2024.

Regla 7 (b)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (b)(5).

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

**I.**

El Sr. Hernández Compres cumple una condena de 35 años de reclusión por la comisión del delito de asesinato atenuado y por infracciones a los Arts. 5.04 y 5.15 de la Ley de Armas.[2] La JLBP adquirió jurisdicción para considerar su caso el 8 de junio de 2023.[3] Tras evaluar la documentación que obra en el expediente, el 7 de octubre de 2024,[4] la JLBP emitió una "Resolución" en la que se incorporaron las siguientes determinaciones de hecho, las cuales hacemos formar parte íntegra de este dictamen:

*1. Surge del expediente que se expidió contra el peticionario un "detainer" federal de inmigración de los Estados Unidos de América el 3 de junio de 2015.*

*2. Surge del expediente [que el peticionario] está sujeto a ser deportado a su país de origen República Dominicana.*

*3. El peticionario carece de un plan de salida viable, a la luz de lo dispuesto por las Secciones 1324 y 1324A de la Ley de Inmigración y Naturalización de los Estados Unidos de Norteamérica. Dichas disposiciones prohíben a ciudadanos de Estados Unidos o residentes legales de dicha nación ofrecer vivienda y empleo a inmigrantes ilegales. Por lo que el plan de salida sometido en el presente caso no resulta viable.*

*4. De la Evaluación psicológica, realizada el 6 y 7 de julio de 2023, surge que, muestra como factor de riesgo la naturaleza del delito por el cual cumple sentencia. Además, se desprende que se recomienda que el peticionario se beneficie de intervenciones con algún profesional de la conducta humana para ayudarle a mejorar su auto control y asertividad para la solución de conflictos.*

*5. La Junta entiende que el peticionario debería ser evaluado psiquiátricamente para descartar cualquier riesgo a la comunidad conforme a la naturaleza del delito por el cual cumple sentencia el peticionario y para*

---

[2] Véase, Ley Núm. 404-2000, 25 LPRA secs. 458d y 458, respectivamente.
[3] La JLBP adquiere jurisdicción "cuando el peticionario haya cumplido el término mínimo de reclusión conforme a la sentencia por la cual se encuentra recluido". Véase, Sección 7.1 del Reglamento Núm. 9232, *infra*.
[4] Notificada el 4 de diciembre de 2024.

*a su vez atender las posibles necesidades de éste en dicha área.*

*6. El peticionario se encuentra clasificado en custodia de mínima seguridad a desde el 26 de octubre de 2021.*

*7. El peticionario cuenta con muestra de ADN con fecha del 9 de abril de 2015, cumpliendo así con la Ley 175 del 1998; según enmendada.*

*8. El 20 de junio de 2018, el peticionario completó las terapias grupales para transformación de patrones adjetivos.*

Tras analizar los hechos y la normativa aplicable, la JLBP determinó que el Sr. Hernández Compres carece de un plan de salida viable y, consecuentemente, denegó la solicitud de libertad bajo palabra. Fundamentó su determinación en el hecho de que el recurrente posee un *detainer* de inmigración. La agencia razonó que: (1) conceder el privilegio burlaría los objetivos del Immigration and Customs Enforcement (ICE), y (2) en virtud de la legislación federal, ningún ciudadano residente de los Estados Unidos puede ofrecer empleo o alojamiento a un extranjero no autorizado sin contravenir la ley, lo que impide la viabilidad del plan de salida propuesto.

Inconforme, el Sr. Hernández Compres recurre ante este foro apelativo intermedio, y señala la comisión de dos errores, a saber:

*Erró la JLBP al denegar el privilegio de la Junta de Libertad Bajo Palabra aduciendo que el Peticionario no cuenta con plan de salida viable.*

*Erró la JLBP al asumir que el Peticionario es un inmigrante ilegal solo por su nacionalidad y basar su denegación en ese elemento.*

## II.

### -A-

Las decisiones, órdenes y resoluciones finales emitidas por las agencias administrativas están sujetas al proceso de revisión judicial. Art. 4.006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24y(c)). El propósito fundamental de este proceso es garantizar que las agencias actúen dentro de los poderes que les fueron

delegados por ley. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 113-114 (2023).

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas gozan de una presunción de legalidad y corrección. *Otero Rivera v. Bella Retail Group et al.*, 2024 TSPR 70, 214 DPR ___ (2024). En ese sentido, los tribunales apelativos, en el ejercicio de su facultad revisora, deben otorgar deferencia a las determinaciones emitidas por estos organismos. *Buxó Santiago v. ELA*, 2024 TSPR 130, 214 DPR ___ (2024). Este principio surge y se fundamenta en la experiencia y pericia que poseen las agencias sobre la materia que les ha sido encomendada. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2024).

En armonía con la deferencia y la presunción de corrección que caracteriza las decisiones administrativas, la parte que impugna judicialmente las determinaciones de hecho de una agencia tiene el peso de la prueba para demostrar que éstas carecen de una base racional que las sustente. *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022). Así pues, el criterio rector en la revisión judicial es la razonabilidad. *Hernández Feliciano v. Mun. Quebradillas, supra,* a la pág. 115. Acorde lo anterior, el tribunal revisor está impedido de sustituir el criterio de la agencia por el suyo propio, salvo que dictamine que la decisión del organismo administrativo no está basada en el expediente o es irrazonable. *Voilí Voilá Corp. et al. v. Mun. Guaynabo, supra.*

De este modo, el análisis del tribunal se circunscribe a determinar si la agencia actuó de forma arbitraria, ilegal o irrazonable a tal grado que se configure un abuso de discreción. *Otero Rivera v. Bella Retail Group et al., supra.* Por ende, las decisiones de las agencias deben ser respetadas, salvo que la parte que las impugne presente prueba suficiente para rebatir tal presunción. *Íd.*

Ahora bien, nuestra deferencia no es absoluta y cede en situaciones particulares: (1) si la decisión del ente administrativo no está basada en evidencia sustancial; (2) cuando la agencia erró en la interpretación y/o aplicación de las leyes o reglamentos que administra; (3) cuando la actuación administrativa es arbitraria, irrazonable o ilegal, o sus determinaciones carecen de fundamento racional; o (4) si la acción de la agencia administrativa vulnera derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021), citando a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016).

En suma, las determinaciones de hecho serán sostenidas por el tribunal siempre que se fundamenten en evidencia sustancial contenida en el expediente administrativo. Sec. 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675. Sin embargo, esta noción no puede fundamentarse en conjeturas o inferencias superficiales, sino en el análisis razonable de la determinación administrativa en función de la totalidad del expediente. *OEG v. Martínez Giraud, supra*, a la pág. 90.

Por su parte, las conclusiones de derecho son revisables en todos los aspectos. Sec. 4.5 de la Ley Núm. 38-2017, *supra*. Es decir, nuestra deferencia no se extiende automáticamente a las conclusiones jurídicas formuladas por la agencia. *Otero Rivera v. Bella Retail Group et al., supra*. Después de todo, la deferencia que reconocemos al peritaje administrativo en ningún modo limita la facultad revisora del tribunal, pues la interpretación de las leyes corresponde al foro judicial y no a la agencia administrativa. *Buxó Santiago v. ELA, supra*, citando a *OEG v. Rodríguez y otros*, 159 DPR 98, 124 (2003). Por ende, la interpretación de la agencia no prevalecerá cuando produzca resultados incompatibles al propósito del estatuto interpretado y a su política pública. *OEG v. Martínez Giraud, supra*, a las págs. 90-91.

**-B-**

La Constitución de Puerto Rico establece como política pública que el Estado habrá de "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. P.R., LPRA, Tomo 1.

En cumplimiento con dicho mandato, nuestra Asamblea Legislativa promulgó la Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1501 *et seq.*, según enmendada, por medio de la cual se creó la Junta de Libertad Bajo Palabra. Esta entidad posee autoridad para "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico". Véase, Art. 3 de la Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1503. En otros términos, la Junta tiene el poder de conceder a una persona que extingue su pena dentro de una institución correccional el privilegio de que cumpla, de forma cualificada, la última parte de su sentencia fuera de la institución penal. *Benítez Nieves v. E.L.A. et al.*, 202 DPR 818, 825 (2019).

Ahora bien, "**el beneficio de la libertad bajo palabra no es un derecho reclamable**, **sino un privilegio cuya concesión y administración recae en el tribunal o en la Junta**". *Quiles v. Del Valle*, 167 DPR 458, 475 (2006). (Énfasis suplido). Por lo tanto, la Junta posee discreción para decretar la libertad bajo palabra de cualquier persona recluida en las instituciones penales de Puerto Rico, siempre que no se trate de los delitos excluidos de dicho beneficio, y que la persona haya cumplido el término mínimo de la sentencia dispuesto por dicha ley. Art. 3 de la Ley Núm. 118 de 22 de julio de 1974, *supra*. **Por tratarse de un privilegio**, **la Junta tendrá facultad para concederlo tomando en consideración ciertos factores que establece la ley**.

La Junta, dentro de su facultad para adoptar, modificar y derogar reglamentos, aprobó el Reglamento Núm. 9232 de 18 de noviembre de 2020 (Reglamento 9232). En lo concerniente, la Sección 10.1 del Art. X del aludido cuerpo reglamentario establece lo siguiente:

> *A. La Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión.*
>
> *B. Al evaluar los casos, la Junta tomará en consideración los siguientes criterios con relación al peticionario:*
>
> *1. Historial delictivo*
>
> *[…]*
>
> ***f. Si existe una orden de detención ("detainer") emitida por cualquier estado de los Estados Unidos, el tribunal federal, el gobierno federal y/o del Servicio de Inmigración y Naturalización.***
>
> ***i. El sólo hecho de que exista una orden de detención ("detainer") contra un peticionario no será fundamento para denegar la libertad bajo palabra siempre y cuando el peticionario cumpla con todos los demás criterios.***
>
> *[…]*
>
> *12. La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad.*
>
> (Énfasis provisto).

Por su parte, el Art. V (q) del Reglamento 9232 define el término de "detainer" de inmigración de la siguiente manera:

> *Es una herramienta utilizada para el Servicio de Inmigración y Control de Aduanas de los Estados Unidos (por sus siglas en inglés ICE) y otros funcionarios del Departamento de Seguridad Nacional (por sus siglas en inglés DHS), cuando la Agencia identifica a personas potencialmente deportables que estén detenidas en cárceles en Puerto Rico.*

En cuanto a la concesión o denegatoria del privilegio, la Sección 12.3 (B) del Reglamento 9232 dispone que, "[c]uando la Junta deniegue la libertad bajo palabra, expresará individualmente en su resolución las determinaciones de hecho y conclusiones de derecho que fundamentan dicha determinación, así como indicará la fecha (mes y año) en que volverá a considerar el caso".

Debemos recordar que, ante el ejercicio de discreción que la ley le concede a la Junta, es esta la entidad facultada para decidir si concede o revoca el beneficio de libertad condicional a un confinado. Este Foro no ha de invadir esa autoridad si no hay en el expediente indicios de arbitrariedad o irrazonabilidad.

### III.

Tras un análisis del legajo apelativo, concluimos que procede confirmar la decisión recurrida. El recurrente no demostró que la misma sea irrazonable o contraria a derecho.

Según adelantamos, la JLBP denegó conceder el privilegio de libertad bajo palabra solicitado por el Sr. Hernández Compres. Razonó que recurrente no contaba con un plan de salida viable, ya que, debido a que, por tratarse de un inmigrante que posee un *detainer* de inmigración, éste no podrá obtener un plan de salida viable en las áreas de vivienda y oferta de empleo. Fundamentó su proceder en el 8 USCA sec. 1324.

**En efecto**, **la ley federal prohíbe el acto de proveer asilo o empleo a un inmigrante ilegal**. En su escrito, el recurrente niega ser un ciudadano ilegal. Por el contrario, alega que no existe ilegalidad en su estatus migratorio, que tiene sus documentos migratorios al día, y que la determinación recurrida se basa exclusivamente en su nacionalidad dominicana. **Sin embargo**, **el recurrente no ha presentado ni un ápice de evidencia para sustentar sus argumentos**. **Su postura de basa únicamente en alegaciones y**, **en nuestra jurisdicción**, "**meras alegaciones no constituyen prueba**". *Bones Cruz v. Registrador*, 194 DPR 852, 858 (2016), citando a *U.P.R. Aguadilla v. Lorenzo Hernández*, 184 DPR 1001, 1013 (2012). (Énfasis nuestro).

Como ya explicamos, la parte que impugna judicialmente las determinaciones de hecho de una agencia tiene el peso de la prueba para demostrar que éstas carecen de una base racional que

las sustente. En el presente caso, el Sr. Hernández Compres no presentó prueba suficiente para rebatir la presunción de corrección que poseen las decisiones administrativas. En consecuencia, no podemos concluir, ni el recurrente nos ha convencido, que la JLBP actuó de forma irrazonable al no conceder el privilegio solicitado. Su determinación se basó en la ley federal y en la evidencia que obraba en el expediente que tenía ante sí.

Por las razones que anteceden, determinamos que la decisión recurrida fue correcta. El Sr. Hernández Compres no aportó evidencia suficiente para derrotar la presunción de corrección que caracteriza la decisión del foro administrativo. Es importante recalcar que, al ejercer nuestra función revisora, estamos obligados a considerar la especialización, experiencia y pericia de la agencia. Consideramos que la JLBP no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes delegados. La totalidad de la evidencia que obra en el récord nos obliga a confirmar el dictamen recurrido.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, confirmamos la "Resolución" recurrida, emitida por la Junta de Libertad Bajo Palabra.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones